UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------- X

S.G., by his parent and natural guardian,
SHAWN GILLIAM, SR.,

                         Plaintiff,

              -against-

THE CITY OF NEW YORK; SGT. DEREK BARRETO,
Shield # 2378; P.O. EDGAR BRITO, Shield #
21426; P.O. ANDREW PIZZINO, Shield #
5486; P.O. JAMES HU, Shield # 18657; P.O.
MICHAEL DONOGHUE, Shield # 3779; and P.O.
JOHN DOES # 1-15, the individual
defendant(s) sued individually and in
their official capacities,

                         Defendants.

---------------------------------------- X

**FIRST AMENDED**
**COMPLAINT**

12-cv-4310-BMC

ECF Case

Jury Trial Demanded

**PRELIMINARY STATEMENT**

      1.   This is a civil rights action in which plaintiff
seeks relief for the violation of plaintiff's rights secured by
42 U.S.C. § 1983; and the First, Fourth, Sixth, and Fourteenth
Amendments to the United States Constitution, and the laws of
the State of New York.  Plaintiff's claims arise from incidents
that arose on or about March 28, 2011 and September 30, 2011.
During the incidents, the City of New York, and members of the
New York City Police Department ("NYPD") subjected plaintiff to,
among other things: unlawful search and seizure; false arrest;
assault and battery; unreasonable force; failure to intervene;

retaliation; implementation and continuation of an unlawful municipal policy, practice, and custom; and respondeat superior liability.  Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.    Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.  With respect to the September 30, 2011 incident, plaintiff's notice of claim was duly filed on defendant City of New York within 90 days of the incidents at issue, more than 30 days have elapsed since such filing and the City of New York has refused to settle plaintiff's claims.  Moreover, this action has been filed within one year and 90 days of the incidents.  Plaintiff has satisfied all conditions precedent for the filing of this action.

2

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Queens County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

**PARTIES**

5.    Plaintiff S.G., by his parent and natural guardian Shawn Gilliam, is an African American, and resident of the State of New York, Queens County, born in 1995.

6.    At all times alleged herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.    At all times alleged herein, defendants Sgt. Derek Barreto, Shield # 2378, P.O. Edgar Brito, Shield # 21426, P.O. Andrew Pizzino, Shield # 5486, P.O. James Hu, Shield # 18657, P.O. Michael Donoghue, Shield # 3779, and P.O. John Does # 1-15 were New York City Police Officers employed with the Pomonok Housing Police Precinct, Police Service Area 9, 107th Precinct, and/or 114th Precinct, located in Queens County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

8.    The individual defendants are sued in their individual and official capacities.

3

## STATEMENT OF FACTS

**March 28, 2011 Incident**

9.    On March 28, 2011, in the vicinity of 4012 10th Street, Queens, New York, and the Pomonok Housing Police Precinct, Queens, New York, several police officers operating from the Pomonok Housing Police Precinct, Police Service Area 9, and/or 107th Precinct, including upon information and belief, defendants Sgt. Barreto, P.O. Brito and P.O. John Does # 1-2, at times acting in concert, and at times acting independently, committed the following illegal acts against the plaintiff.

10.    On March 28, 2011, at approximately 8:00 a.m. to 9:00 a.m., in the vicinity of 4012 10th Street, Queens, New York, Sgt. Barreto, P.O. Brito and P.O. John Does # 1-2, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime unlawfully arrested plaintiff.

11.    Plaintiff had gone to pick up his friend in the morning to walk to school.

12.    The police approached plaintiff and his friend.

13.    The police grabbed both plaintiff and his friend and started searching them on the street.

4

14.    The police frisked plaintiff, searched his pockets and around his genital region.

15.    The police found no contraband, weapons, or controlled substances on plaintiff or his friend.

16.    The police said they were looking for marijuana.

17.    The boys told the police they did not have any marijuana, and plaintiff complained that they were searching them for no reason and harassing them.

18.    In retaliation, the police turned plaintiff around, twisted his arms behind his back and placed extremely tight handcuffs on him that caused his hands to go numb.

19.    The police let plaintiff's friend go to school.

20.    The police transported plaintiff to the Pomonok Housing Precinct where they processed his arrest.

21.    At the precinct, the police put plaintiff in a room and made him take off his shoes and some of his clothes, and searched him again.

22.    Again, the police found no contraband, weapons, or controlled substances on plaintiff.

23.    Eventually, the police transported plaintiff to Jamaica Family Court Booking for arraignment.

24.    In order to cover up their illegal actions, the defendant officers, pursuant to a conspiracy, initiated, and

falsely and maliciously told the Corporation Counsel for the City of New York that plaintiff had committed various crimes.

25.    The defendant officers made these false allegations, despite the fact that they had no evidence that plaintiff had committed a crime, to cover up their misconduct, to retaliate against plaintiff, to meet productivity goals and quotas, and to justify overtime expenditures.

26.    Upon information and belief, the unlawful actions against plaintiff were also based on profiling.

27.    However, as there was no basis to arrest plaintiff, much less prosecute him, the Corporation Counsel for the City of New York declined to prosecute him and he was released, and the case against him terminated in his favor.

**September 30, 2011 Incident**

28.    On September 30, 2011, in the vicinity of 22-30 36th Avenue, Long Island City, New York, and the 114th Precinct, Queens, New York, several police officers operating from the 114th Precinct, including upon information and belief, defendants P.O. Pizzino, P.O. Hu, P.O. Donoghue, and P.O. John Does # 3-15, at times acting in concert, and at times acting independently, committed the following illegal acts against the plaintiff.

29.    On September 30, 2011, at approximately 4:00 p.m., in the vicinity of 4012 10th Street, Queens, New York, P.O.

6

Pizzino, P.O. Hu, P.O. Donoghue, and P.O. John Does # 3-15,
without either consent, an arrest warrant, a lawful search
warrant, probable cause, or reasonable suspicion that plaintiff
(or any third person) had committed a crime unlawfully arrested
plaintiff.

30.    Plaintiff had received a phone call from his
father's girlfriend that the police were attacking his father.

31.    Plaintiff went to the scene and saw the police
and his father and his father's girlfriend (she was not under
arrest).

32.    Plaintiff's father was on the ground in
handcuffs.

33.    The ground around plaintiff's father was wet from
pepper spray and his father's reaction to the pepper spray.

34.    Plaintiff tried to find out what was happening.

35.    Plaintiff saw that his father needed medical
help, and he tried, without interfering or obstructing the
police, to request that the police provide his father with
medical assistance and to talk to his father.

36.    The police had, among other things, fractured one
of plaintiff's father's ribs.

37.    The police ignored plaintiff's questions and
requests, and instead grabbed plaintiff, threw him to the

ground, kneed him the back, and placed extremely tight handcuffs on him (which they failed to loosen when plaintiff asked).

38.    The police transported plaintiff to the 114th Precinct where they processed his arrest.

39.    The police transported plaintiff to Central Booking for arraignment.

40.    In order to cover up their illegal actions, the defendant officers, pursuant to a conspiracy, initiated, and falsely and maliciously told the Queens District Attorney's Office that plaintiff had committed various crimes.

41.    The defendant officers made these false allegations, despite the fact that they had no evidence that plaintiff had committed a crime, to cover up their misconduct, to retaliate against the plaintiff, to meet productivity goals and quotas, and to justify overtime expenditures.

42.    Upon information and belief, the unlawful actions against the plaintiff were also based on profiling.

43.    The charges against plaintiff were adjourned in contemplation of dismissal on or about October 1, 2011, and the case was dismissed, terminating in his favor.

**General Allegations**

44.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

8

45.    Plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

58.    At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

59.    The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

60.    As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

61. Plaintiff is entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiff's rights.

## FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

62. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

63. Defendants unlawfully stopped and searched plaintiff without cause, a warrant, or consent.

63. Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER STATE LAW)

64. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

65. Defendants unlawfully stopped and searched plaintiff without cause, a warrant, or consent.

66. Accordingly, defendants are liable to plaintiff for unlawful search and seizure under New York State law.

### THIRD CLAIM

**(FALSE ARREST UNDER FEDERAL LAW)**

67.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

68.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

69.    Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

### FOURTH CLAIM

**(FALSE ARREST UNDER STATE LAW)**

70.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

71.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

72.    Accordingly, defendants are liable to plaintiff for false arrest under New York State law.

## FIFTH CLAIM

### (UNREASONABLE FORCE)

73.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

74.    The individual defendants' use of force upon plaintiffs was objectively unreasonable.

75.    The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

76.    Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

77.    Accordingly, the defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## SIXTH CLAIM

### (ASSAULT)

78.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

79.    Among other things as described above, defendants' search and seizure, battery, false arrest, and

12

excessive use of force against plaintiff placed him in fear of imminent harmful and offensive physical contacts.

80.    Accordingly, defendants are liable to plaintiff under New York State law for assault.

## SEVENTH CLAIM

### (BATTERY)

81.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

82.    Among other things as described above, defendants' search and seizure, false arrest, and excessive use of force against plaintiff were illegal physical contacts.

83.    Accordingly, defendants are liable to plaintiff under New York State law for battery.

## EIGHTH CLAIM

### (FAILURE TO INTERVENE)

84.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

85.    Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

86.    Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

13

## NINTH CLAIM

### (RETALIATION CLAIM)

87.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

88.    Plaintiff exercised free speech during the incident by, among other things, complaining about the individual defendants' unlawful acts.

89.    Plaintiff's use of free speech was a motivating factor in the individual defendants' decision to falsely arrest them.

90.    Accordingly, the individual defendants are liable to plaintiff under the First Amendment to the United States Constitution.

## TENTH CLAIM

### (MONELL CLAIM)

91.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

92.    Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

93.    Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices, customs and policies against plaintiff: (1)

14

unlawfully stopping and searching innocent persons; (2)

wrongfully arresting innocent persons in order to meet

productivity goals; (3) wrongfully arresting individuals based

on pretexts and profiling; (4) using unreasonable force on

individuals; (5) fabricating evidence against innocent persons;

and (6) retaliating against people who complain about police

misconduct.

94.    Upon information and belief, defendant City of

New York, at all relevant times, was aware that the defendants

were unfit officers who have previously committed the acts

alleged herein, have a propensity for unconstitutional conduct,

or have been inadequately trained.

95.    Nevertheless, defendant City of New York

exercised deliberate indifference by failing to take remedial

action.  The City failed to properly train, retrain, supervise,

discipline, and monitor the individual defendants and improperly

retained and utilized them.  Moreover, upon information and

belief, defendant City of New York failed to adequately

investigate prior complaints filed against the individual

defendants.

96.    Further, defendants City of New York was aware

prior to the incident that the individual defendants (in

continuation of its illegal custom, practice and/or policy)

would stop, arrest and prosecute innocent individuals, based on pretexts and false evidence.

97.   The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct involving the individual defendants, placing the defendant City of New York on notice of the individual defendants' propensity to violate the rights of individuals.

98.   In addition to frequently violating the civil rights of countless residents of New York City, numerous members of the NYPD commit crimes. Officers have been arrested and convicted of such crimes as planting evidence on suspects, falsifying police reports, perjury, corruption, theft, selling narcotics, smuggling firearms, robbery, fixing tickets, driving under the influence of alcohol, vehicular homicide, assault and domestic violence. In fact, former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state court and served time in federal prison. In 2011, Brooklyn South Narcotics officer Jerry Bowens was convicted of murder and attempted murder in Supreme Court, Kings County, while under indictment for corruption and is presently serving a life sentence. In 2011, Police Officer William Eiseman and his subordinate Police Officer Michael Carsey were convicted of

felonies in Supreme Court, New York County, for lying under oath, filing false information to obtain search warrants and performing illegal searches of vehicles and apartments. In 2012, New York City Police Officer Michael Pena was convicted in Supreme Court, New York County, of raping and sexually assaulting a woman at gunpoint and is presently serving a sentence of 75 years to life.

99.   Additionally, the existence of the aforesaid unconstitutional customs and polices of profiling minorities, may be inferred from an analysis of the NYPD conducted by the New York Civil Liberties Union ("NYCLU"). The NYCLU's analysis revealed that more than 2 million innocent New Yorkers were subjected to police stops and street interrogations from 2004 through 2011, and that black and Latino communities continue to be the overwhelming target of these tactics. Nearly nine out of 10 stopped-and-frisked New Yorkers have been completely innocent, according to the NYPD's own reports.

100.   In August 2009, Proffer Levine released a report entitled *The Epidemic of Pot Arrests in New York City*, which stated: Perhaps most appalling is who the police are arresting for marijuana possession. United States government studies have consistently found that young whites use marijuana at higher rates than do young blacks or Latinos. But the NYPD has long

17

arrested young blacks and Latinos for pot possession at much higher rates than whites. In 2008, blacks were about 26% of New York City's population, but over 54% of the people arrested for pot possession. Latinos were about 27% of New Yorkers, but 33% of the pot arrestees. Whites were over 35% of the City's population, but less than 10% of the people arrested for possessing marijuana. In 2008, police arrested Latinos for pot possession at four times the rate of whites, and blacks at seven times the rate of whites.

101.  Furthermore, documented civilian complaints about officer misconduct show that African Americans are the most likely targets of abuse, but their complaints are largely ignored.  According to the City of New York's Civil Complaint Review Board's ("CCRB") Status Report, dated December and January 2010, in 2010 African Americans were overrepresented as alleged victims of police misconduct.  Although making up only 23% of New York City's population, they are 58.5% of the alleged victims in CCRB complaints.  On the other hand, whites and Asians were a disproportionately low percentage of alleged victims.

102.  The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the

18

NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

103.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

104.    The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

## ELEVENTH CLAIM

### (RESPONDEAT SUPERIOR)

105.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

106.    The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against plaintiff, including falsely arresting, assaulting, and battering plaintiff.

107.  The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

**WHEREFORE,** plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.  Compensatory damages in an amount to be determined by a jury;

b.  Punitive damages in an amount to be determined by a jury;

c.  Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.  Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:  Brooklyn, New York
        November 20, 2012

MICHAEL O. HUESTON, ESQ.
*Attorney for Plaintiff*
16 Court Street, Suite 3301
Brooklyn, New York 11241
(718) 246-2900
mhueston@nyc.rr.com
By:

__s/_____
MICHAEL O. HUESTON